**Opinion filed July 20, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00259-CR

_____

## JOHN ANTHONY SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-18-1478-CR**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a life sentence assessed by the trial court after it adjudicated John Anthony Sanchez's guilt and revoked his deferred adjudication community supervision. In his sole issue on appeal, Appellant contends that the evidence was legally insufficient to support the trial court's judgment. Appellant essentially asserts that the evidence was legally insufficient to support the trial court's imposition of a life sentence. We affirm.

*Background Facts*

The State charged Appellant by indictment with the first-degree felony offense of possession with an intent to deliver cocaine in an amount of four grams or more but less than two hundred grams. *See* TEX. HEALTH & SAFETY CODE § 481.112(d) (West 2017). Appellant pleaded guilty pursuant to a plea bargain agreement on May 11, 2021. The trial court deferred a finding of guilt and placed Appellant on deferred adjudication community supervision for a term of ten years.

The State filed a motion on August 24, 2021, to adjudicate Appellant's guilt alleging that on August 22, 2021, Appellant had committed six violations of the terms and conditions of his community supervision. Four conditions of Appellant's community supervision were that he shall (1) commit no new offense; (2) avoid persons and/or places of disreputable or harmful character, including an establishment where 51% or more of the establishment's revenue is derived from the sale of alcoholic beverages; (3) not associate with or be in the presence of any person who has a criminal record involving any felony offense; and (4) be at his residence from 10:00 p.m. until 6:30 a.m. The alleged violations in the State's motion to adjudicate were that Appellant committed three new offenses: possession of marihuana, unlawful carrying of a weapon, and theft of a firearm; failure to avoid an establishment where 51% or more of revenue is derived from the sale of alcoholic beverages; associated with, or was in the presence of, a person who has a felony criminal record; and failed to be at his residence by 10:00 p.m. Appellant pleaded "not true" to the first three allegations that alleged new criminal offenses and "true" to the remaining allegations.

Officer Nicholas Moore with the Odessa Police Department testified about the events surrounding Appellant's arrest on August 22, 2021. Officer Moore and Sergeant Tyler Rogers were working as off-duty police officers at Club Tequila. Officer Moore testified that Club Tequila routinely employed off-duty police

officers because of the narcotics trafficking, physical violence, and gun violence that frequently occurred on the premises. Officer Moore testified that, on August 22, 2021, he noticed a group of people walk into the club, and he checked social media to see "what was being conducted inside the club." Officer Moore viewed a Snapchat that Kamori Allen, "a known criminal for drive-by shootings," posted from Club Tequila's bathroom. Officer Moore observed that Luis Alberto Tavarez, Samuel Avila, Caleb Gaddison, and Appellant were also taking Snapchats inside the bathroom at the club. Officer Moore testified that several of the individuals in Allen's Snapchat were the subject of an active investigation.

Officer Moore testified that the Odessa Police Department knew of these individuals because "[t]heir names, and their associates, have popped up multiple times for multiple drive-by shootings, narcotics dealings." Officer Moore had knowledge that Avila was on deferred adjudication community supervision for a burglary-of-a-habitation charge, had been indicted for a different burglary-of-a-habitation charge, had previously been arrested for other burglaries, had been connected to a murder, and was selling narcotics.[1]

Officer Moore and Sergeant Rogers entered the club and observed the group smoking marihuana. The group moved to a different corner of the club to avoid Officer Moore and Sergeant Taylor. The officers then returned outside and waited by the only exit for the group to leave the club. At around 2:00 a.m., Avila, Zephaniah Blaylock, DeMarcus Cameron, and Appellant exited the club and got into a vehicle. Sergeant Rogers requested that two patrol units assist in conducting a traffic stop on the vehicle. Officer Moore watched the vehicle leave the parking lot and speed away from the marked patrol units.

---

[1]The State named Avila as the person with a felony criminal record that Appellant was in the presence of at the time of his arrest.

The vehicle pulled into the Palms Apartments, a location that Officer Moore testified was known for narcotics distribution, and the four passengers "immediately exited the vehicle in a fast motion." Officer Moore approached the vehicle after the passengers left and noticed two handguns and an open bottle of liquor in plain view along with "an extremely strong odor of marijuana" emitting from the vehicle's open window. Officer Moore secured a search warrant for the vehicle and found several additional items upon execution of the warrant. In total, officers recovered an open bottle of liquor, "puff bars, which [] are electronic tobacco smoking devices," marihuana, a digital scale commonly used for weighing narcotics, three firearms that had been reported stolen, and an additional firearm.

Officers located the four individuals hiding in an apartment closet. Officer Moore testified that, because no one took responsibility for the marihuana or the three stolen firearms[2] that were "all in [the] immediate care, custody, and control of everybody in the vehicle," Appellant was charged with possession of marihuana, unlawful carrying of a weapon, and three "counts" of theft of a firearm.

At the close of the guilt/innocence phase of the revocation hearing, the trial court found the first three allegations in the State's motion to adjudicate true, accepted Appellant's plea of true to allegations four through six, and adjudicated Appellant guilty of possession of cocaine with an intent to deliver. Punishment evidence then followed.

Investigator Cody Smith with the Ector County Sheriff's Office testified, without objection, regarding Appellant's previous involvement in a 2020 murder that he investigated. On November 1, 2020, Investigator Smith was dispatched to a shooting-homicide that had occurred at a party. A witness informed officers that he and the victim were leaving the party in a vehicle when numerous people began

---

[2]Avila took responsibility for the firearm that had not been reported as stolen.

4

firing at the vehicle. The victim was shot and killed in his vehicle. The witness identified Appellant as one of the shooters.

Investigator Smith testified that there had been an "ongoing investigation" of Appellant and the victim's relationship. Several shootings and "weapons-related problems" had already occurred between the victim and Appellant and his friends. Officer Smith testified that these "issues" between Appellant and the victim escalated until "this night where they ended up seeing each other, and the shooting occurred."

Appellant was charged with murder. However, Investigator Smith testified that evidence tampering and conflicting witness statements created issues with the investigation and prosecution of the offense. The victim's parents were subsequently charged with tampering and fabricating physical evidence after officers located physical evidence involved in the shooting at the parents' residence. Investigator Smith also acknowledged that conflicting statements from witnesses presented a problem with the investigation and prosecution of the shooting.

Next, the State called Corporal Gary Potter with the Odessa Police Department to testify regarding an April 2018 incident involving Appellant. Corporal Potter testified that detectives were conducting surveillance on a residence and witnessed Appellant smoking marihuana outside the property. Corporal Potter arrived at the scene after a detective informed him that a known drug dealer was at the residence and was seen possessing marihuana. Appellant and the other people in the home fled when police began approaching the residence. Officers entered the home in pursuit of the individuals and saw "a lot of criminal-type evidence" in plain view, including weapons, marihuana, a digital scale for weighing drugs, a metal pipe, and counterfeit bills. After obtaining a search warrant, Corporal Potter also found approximately 11.1 grams of cocaine in a bedroom where Appellant's school

5

identification card was located. Appellant accepted responsibility for a firearm and the cocaine.

Appellant did not present any witnesses during the punishment hearing. During closing statements, Appellant's trial counsel requested "leniency" because of Appellant's age and his "realiz[ation]" that "he did wrong in going to his sister's birthday party at Club Tequila and staying out too late." The trial court sentenced Appellant to imprisonment for life in the Institutional Division of the Texas Department of Criminal Justice.

*Analysis*

In his sole issue on appeal, Appellant contends the evidence was legally insufficient to support the trial court's imposition of a life sentence. We first note that, when the length of the sentence imposed is within the legislatively prescribed range, it is not subject to a sufficiency-of-the-evidence review on appeal. *Jarvis v. State*, 315 S.W.3d 158, 162 (Tex. App.—Beaumont 2010, no pet.); *see Parker v. State*, 462 S.W.3d 559, 566 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same) (citing *Jarvis*, 315 S.W.3d at 162).

Appellant makes three arguments as to why he believes that the trial court's life sentence was improper. First, Appellant asserts that the State impermissibly relied on Investigator Smith's testimony during punishment because it failed to list the murder allegation in its motion to adjudicate guilt, thus creating a "material variance" between the State's motion to adjudicate and the evidence presented at the hearing. However, Appellant has cited no authority, and we have found none, that requires the State to allege in its motion to adjudicate guilt the evidence it wishes to offer on punishment.

After the adjudication of guilt, the case proceeds as if the adjudication of guilt was never deferred. TEX. CODE CRIM. PROC. ANN. art. 42A.110(a) (West 2018); *see also Blackwelder v. State*, No. 2-05-042-CR, 2006 WL 3525383, at *2 (Tex. App.—

6

Fort Worth 2006, pet. ref'd) (mem. op., not designated for publication) (applying Article 37.07 to the punishment portion of the appellant's adjudication hearing). "Code of Criminal Procedure Article 37.07, Section 3(a) governs the admissibility of evidence during the punishment phase of a non-capital trial." *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (footnote omitted); *see* CRIM. PROC. art. 37.07, § 3 (West Supp. 2022). Section 3(g) contains a notice requirement that is triggered "[o]n timely request of the defendant." CRIM. PROC. art. 37.07, § 3(g); *Sanders v. State*, 422 S.W.3d 809, 814 (Tex. App.—Fort Worth 2014, pet. ref'd). Here, Appellant has not cited to any place in the record wherein he requested notice, thus, he has not shown that he was entitled to notice of the State's intent to introduce evidence of the alleged murder. *See Sanders*, 422 S.W.3d at 814; *Blackwelder*, 2006 WL 3525383, at *2.

The State set forth six allegations in its motion to adjudicate guilt, all of which stemmed from Appellant's August 22, 2021, arrest. After Officer Moore's testimony about the events of August 22, 2021, the trial court clearly stated on the record that it (1) found the six allegations in the State's motion to adjudicate guilt true; (2) revoked Appellant's community supervision; (3) adjudicated Appellant guilty of the underlying offense; and then (4) announced that it would "entertain some punishment evidence at this time." Only then did the State call Investigator Smith to testify about Appellant's suspected involvement in the 2020 murder. As noted previously, Appellant did not object to Investigator Smith's testimony on any grounds, including either for a lack of notice or a "material variance." Accordingly, Appellant has not preserved his notice and variance arguments for appellate review. *See* TEX. R. APP. P. 33.1. Moreover, the State did not rely on Appellant's alleged involvement in a murder as "the basis for revocation" because Appellant's community supervision had already been revoked, and his guilt already adjudicated, before the State called Investigator Smith to testify. Therefore, there is no variance

between the State's motion to adjudicate guilt and the evidence it presented in support of its motion.

Appellant next contends that the evidence about his suspected involvement in the 2020 murder was impermissible because it occurred outside the period of his community supervision. Appellant's assertion is incorrect. Section 3(a) of Article 37.07 defines the evidence that is admissible at the punishment phase, and it "does not contain a time limitation for the admission of extraneous offenses or bad acts relating to a defendant's punishment." *Sanders*, 422 S.W.3d at 815 n. 5 (citing CRIM. PROC. art. 37.07, § 3(a)(1); *Fowler v. State*, 126 S.W.3d 307, 311 (Tex. App.—Beaumont 2004, no pet.)). We additionally note that, once again, Appellant did not object to Investigator Smith's testimony on any basis.

Appellant's third argument is that the evidence of his alleged involvement in the 2020 murder was an impermissible basis for the trial court to impose a life sentence because the State "did not have enough evidence to proceed to try [Appellant] for murder." Appellant essentially contends that the decision to not proceed with the murder charge against Appellant precluded the State from later relying on the allegations as a basis for punishment evidence. In his reply brief, Appellant contends that, in doing so, the State made "an alarming end run around the due process requirements," and that the State used the revocation proceedings as a "backdoor for obtaining convictions when the evidence falls short of 'beyond a reasonable doubt.'" However, Appellant has not cited any authority for these propositions, and he did not present them to the trial court for consideration.

Appellant is essentially challenging the sufficiency of the evidence supporting an extraneous offense. However, appellate courts do not review the sufficiency of the evidence supporting an extraneous offense presented during the punishment phase of trial. *Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Ultimately, the factfinder decides whether the extraneous offense

was proven beyond a reasonable doubt. *Id.* at 94–95. However, the factfinder is not required to expressly declare that it finds that the defendant committed the extraneous offense beyond a reasonable doubt, and in most instances, it cannot be determined if any such finding would affect the factfinder's determination of the proper punishment. *Id.* Instead, the correct argument is to challenge the trial court's decision to admit the evidence for an abuse of discretion. *Id.* But here, Appellant did not object to the testimony at the punishment hearing and he does not challenge the admission of the evidence on appeal. Accordingly, Appellant's contention is not cognizable on appeal. *See* TEX. R. APP. P. 33.1(a).

A trial court's decision regarding what sentence to impose is a "normative process, not intrinsically factbound." *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). "Subject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal."[3] *Id.* (footnote omitted); *see State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) ("[T]his Court has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual.").

As noted previously, Appellant did not preserve this issue for appellate review. To preserve error for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless

---

[3]Because Appellant is not making an Eighth Amendment claim that his sentence was grossly disproportionate, it would appear that there is a question as to whether his claims are cognizable in light of *Chavez's* use of the term "unassailable." *See Chavez*, 213 S.W.3d at 323–24.

the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). To preserve alleged error relating to excessive punishment, a defendant must make a timely request, objection, or motion to the trial court. *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.); *see Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) ("In some instances, an appellant may preserve a sentencing issue by raising it in a motion for new trial."); *Vidaurri v. State*, 49 S.W.3d 880, 886 (Tex. Crim. App. 2001) (failure to object at the time of sentencing or in a posttrial motion waives error for appeal); *see also Nieto v. State*, No. 11-20-00163-CR, 2022 WL 2252424, at *1 (Tex. App.—Eastland June 23, 2022, pet. ref'd) (mem. op., not designated for publication).

Appellant did not object to his sentence at the adjudication hearing or in a motion for new trial. Even if Appellant had preserved the error, however, his contention is without merit. We review a trial court's determination of punishment for an abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). The general rule is that a trial court does not abuse its discretion if the sentence is within the proper range of punishment. *Id.* The proper range of punishment for a first-degree felony is for life or a term between five years and ninety-nine years. TEX. PENAL CODE ANN. § 12.32 (West 2019). The trial court sentenced Appellant to a term of life. Therefore, Appellant's sentence is within the statutory range for a first-degree felony. *Id.*

Appellant asserts that receiving a life sentence for an offense in which he previously received deferred adjudication proves the murder allegation was impermissibly relied on by the trial court. We find this contention to be unsupported by authority or the record before us. Appellant's contention "confuses the decision to adjudicate, which [is] based on the violations of supervision, with the punishment decision." *Atchison v. State*, 124 S.W.3d 755, 759 (Tex. App.—Austin 2003, pet.

10

ref'd).  Appellant received a life sentence as punishment for the first-degree felony to which he had previously pleaded guilty.

Moreover, "[t]he trial court is presumed to have disregarded any inadmissible evidence." *Moton v. State*, 540 S.W.2d 715, 716 (Tex. Crim. App. 1976); *Holland v. State*, 481 S.W.2d 410, 411 (Tex. Crim. App. 1972).  We have already determined that the State did not need to include Appellant's murder investigation in its motion to adjudicate guilt to present evidence of the murder during punishment.  Even if the trial court disregarded the evidence of the murder investigation, the trial court received Appellants pleas of true to three allegations and testimony from Officer Moore and Corporal Potter that Appellant had committed six violations of probation on August 22, 2021, and had previously been arrested for possession of cocaine in April 2018.  Absent any evidence in the record indicating that the trial court based its decision solely on Investigator Smith's testimony, the trial court could have concluded that Investigator Smith's testimony was inadmissible and relied on Officer Moore and Corporal Potter's testimony instead.  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


July 20, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

11